Kevin WILSON, Appellant

v.

Steve HANEY and Kelly Tyree, Appellees

and

Kevin Wilson, Appellant

v.

Stave Haney and Monty Cook, Appellees.

Nos. 2012–CA–001790–MR, 2012–CA–001791–MR.

Court of Appeals of Kentucky.

April 18, 2014.

Kevin R. Wilson, Pro Se, Eddyville, KY, for appellant.

Angela T. Dunham, Kentucky Dept. of Corrections, Frankfort, KY, for appellees.

Before CAPERTON, LAMBERT, AND MOORE, Judges.

## OPINION

LAMBERT, Judge:

Kevin Wilson appeals from two judgments of the Lyon Circuit Court. After careful review, we affirm the judgments in both appeals.

Wilson is a state prisoner currently housed at the Kentucky State Penitentiary, but he is appealing adverse disciplinary determinations imposed upon him when he was housed at the Northpoint Training Center (hereinafter NTC). In February 2011, Wilson received what was eventually determined to be a fraudulent legal mail package with the sender listed as Attorney Justin Durstock in Covington, Kentucky. Wilson signed for the package on the Daily Privileged Mail Distribution sheet dated February 2, 2011.

On March 21, 2011, a second package with the same return address arrived containing contraband in the form of thirty Suboxone pills. With the discovery of contraband in the second package, officials realized the possibility that the February 2011 package may not have been legal mail, so an investigation was initiated by Lt. David Conley. Attorney Durstock was contacted by Lt. Conley, and Durstock confirmed that he did not send the package; however, the package contained documents relating to one of Wilson's ongoing court cases, along with the Suboxone pills. Lt. Conley's investigation revealed that Wilson persuaded an unknown source to mail him the contraband pills and that Wilson would have received those pills but for the NTC staff intercepting the package of contraband.

Following that investigation, Wilson was charged with two sets of three charges: 1) possessing or promoting dangerous contraband; 2) smuggling contraband items into/out of/within the institution; and 3) using the mail to obtain goods by fraud. One set of those charges was heard by Adjustment Officer Tyree on May 5, 2011, and is the subject of Appeal No. 2012–CA–001790–MR. The other set of charges was heard by a different adjustment officer on May 10, 2011, and is the subject of Appeal No. 2012–CA–001791–MR. For the charges, Wilson was sentenced to 330 days of good time credit loss and 195 days of disciplinary segregation.

Following an appeal to the Warden, Wilson filed a *pro se* Petition for Declaratory Judgment pursuant to Kentucky Revised Statutes (KRS) 418.040 in the Lyon Circuit Court challenging the results of the disciplinary proceedings held on May 5, 2011, and the subsequent proceedings on May 10, 2011. In the first appeal, Wilson appeals the Lyon Circuit Court's order dismissing the Petition for Declaration of Rights. In the second appeal, Wilson appeals the Lyon Circuit Court's order partially granting the Respondents' motion to dismiss.

In the order entered in the first appeal, the circuit court held that Wilson had failed to allege any facts that demonstrated a due process violation. On appeal, Wilson argues the Appellees waited forty-two days beyond their deadline before pleading or defending the action. Wilson argues that under such circumstances, the Appellees must make a showing of excusable neglect as a condition precedent to filing a document late, citing *Puryear v. Greenville*, 432 S.W.2d 437 (Ky.1968). Wilson argues that he raised this argument to the circuit court, but that it declined to enter a default judgment and denied his motion to strike. Wilson alleges on appeal that the circuit court abused its discretion when it denied his motion to strike. Wilson also argues that the circuit court ignored evidence of his innocence, namely his claim that the Appellees relied upon obviously fraudulent photographic

evidence depicting more than thirty pills of various types that expressly belonged to another inmate. He further argues that the circuit court improperly ignored evidence that he did not "receive" the subject package as evidenced by the lack of a signature. Finally, Wilson contends that he was denied the opportunity for due process because he was not afforded the ability to call "live witnesses" during the underlying evidentiary hearing.

▮▮ Prison disciplinary proceedings are not criminal prosecutions and "the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Prison disciplinary proceedings are civil, administrative actions. In *Wolff,* the United States Supreme Court held that procedural due process, in the context of prison disciplinary proceedings, requires: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

▮▮ We will first address Wilson's claim that the Appellees waited forty-two days beyond their deadline before pleading or defending the action. Wilson argues that under such circumstances, the Appellees must make a showing of excusable neglect as a condition precedent to filing a document late. Our review of the case law indicates that in declaratory actions, strict rules of pleading are not followed. *See Knight v. Sale,* 257 S.W.2d 889, 891 (Ky. 1953), and *Board of Education of Berea v. Muncy,* 239 S.W.2d 471, 473 (Ky.1951)

("The declaratory judgment statute is very liberal with respect to both procedural and judicial discretion.") *See also Osborne v. Hewitt,* 335 S.W.2d 922 (Ky.1960). Thus, we disagree with Wilson's contention that the Appellees were required to show excusable neglect for their failure to respond or defend the action and that the trial court's ruling in this regard was an abuse of discretion. We find no abuse of discretion:

▮▮ A review of the record also indicates that Wilson did not indicate in his own exhibits that he was actually going to request any witnesses to testify on his behalf. The record reflects that Wilson was offered the opportunity to send interrogatories to any potential witnesses he chose, and thus the Appellees argue that the circuit court went above and beyond the requirements of *Wolff.* Accordingly, Wilson received all of the procedural due process requirements he was entitled to receive.

In determining the existence of "some evidence" as required by *Wolff,* the analysis "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Walpole,* 472 U.S. at 455, 105 S.Ct. at 2774. With respect to this standard, the United States Supreme Court said, "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.,* 472 U.S. at 455–56, 105 S.Ct. at 2774.

▮▮ Procedural and evidentiary standards that satisfy due process are markedly dissimilar in the prison disciplinary

context than those mandated in a criminal prosecution. The Kentucky Court of Appeals acknowledged the United States Supreme Court's approval of minimal Fourteenth Amendment due process requirements for prison disciplinary proceedings, noting that this was necessary to "balance[ ] the prison administrator's profound interest in maintaining order against the inmate's relatively minor interest in avoiding a portion of his sentence." *Smith v. O'Dea*, 939 S.W.2d 353, 357 (Ky.App.1997). The Court of Appeals went on to hold that the "judicial deference" provided to prison disciplinary bodies under federal law was required under the Kentucky Constitution as well. *Id.* at 358.

In the underlying proceedings, Wilson was found guilty of "promoting dangerous contraband," "smuggling contraband," and "using mail to obtain goods by fraud." We agree with the circuit court and the Appellees that none of the offenses are possessory offenses; the fact that Wilson's Suboxone pills were intercepted before Wilson received them has no bearing on the offenses with which Wilson was charged.

■ We further agree that Lt. Conley's investigation meets *Walpole*'s "some evidence" standard. Lt. Conley procured and produced evidence that Wilson signed for a legal package on February 2, 2011, with a return address of Justin Durstock. On March 21, 2011, another legal package with the same return address was sent to Wilson and intercepted by NTC security staff; the intercepted package contained thirty Suboxone pills. Wilson was not and has never been a client of Justin Durstock, but the March 21, 2011, package contained pleadings in some of Wilson's ongoing litigation, and Mr. Durstock denied sending the package to Wilson. We agree that the facts as presented to the circuit court provide enough evidence in the record to sup-

port the conclusion reached by Appellee Tyree. Thus, we discern no reversible error in the circuit court's judgment in Appeal No. 2012–CA–001790–MR.

■ Regarding Wilson's second appeal, on September 28, 2012, the circuit court entered an order partially granting the petition with regard to the category 6–04 offense, promoting dangerous contraband. In its order, the court stated:

> While it may be true that the original, fraudulently mailed package, which was signed for and received by the Petitioner on February 2, 2011, contained the same or similar controlled substance as the fraudulent package addressed to the Petitioner on March 21, 2011, it is equally possible that the package was "simply a test of the prison's mail security" and contained nothing. As the record does not provide any evidence that something was in that package, written or in the package, it is a tenuous matter to consider the package **dangerous** contraband. If the package itself is considered **dangerous** contraband, there is no discernable difference between the **dangerous** contraband of a Category VI, Item 4 infraction and the contraband of a Category IV, Item 5 infraction. The writers of the CPP manual must have had two different types of contraband in mind when crafting these institutional infractions. If the writers did not, they could have simply stated all contraband was either dangerous or just contraband. As such, there is no evidence meeting a Category VI, Item 4 conviction.

(Emphasis in original).

Based on the above, the circuit court ordered that the Category 6–04 report be expunged and that Wilson's good time credit lost for that conviction be restored. The remaining two convictions remained intact, and the lower court reasoned that there was some evidence to support the

"smuggling contraband into/out of/within the institution" and the "using the mail to obtain money, goods or services by fraud" convictions.

Wilson now argues on appeal that the lower court erred when it applied the "some evidence" standard. In support of this, Wilson argues that the package he received and signed for contained legal paperwork pertaining to his case, and that he was baffled rather than culpable for the contraband also allegedly contained therein.

██ We agree with the Appellees that the *Wolff* standard was satisfied in this case as well. Wilson received notice of the charges on April 29 and April 30, 2011, several days before the May 10, 2011, hearing. Wilson was also advised of his right to call witnesses and present evidence in his defense. Finally, Wilson received a written statement of the evidence relied upon and the reasons for the disciplinary actions. In addition to the *Wolff* requirements, the evidence relied upon by the adjustment officer and the circuit court also met the "some evidence" standard articulated in *Walpole*. If "some evidence" supports the decision arrived at by a prison disciplinary body, it may not be disturbed upon appeal. Therefore, we decline to disturb the circuit court's order denying Wilson's petition for declaration of rights and motion to dismiss the charges against him.

For the foregoing reasons, the judgments of the Lyon Circuit Court are affirmed.

ALL CONCUR.